**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Ronald Lorch and Karen Lorch,** | : |
| | : |
| *Plaintiffs,* | : |
| | : **CIVIL ACTION** |
| **v.** | : |
| | : |
| **Steven I. Gross and Genevieve Gross,** | : **No. 2:24-cv-00070** |
| | : |
| *Defendants.* | : |

**ORDER**

And Now, this _____ day of _____ 2024, upon Consideration of

Ronald Lorch's Motion to Dismiss the Counterclaim and Strike Demand for Attorneys' Fees and

any response thereto, IT IS ORDERED that the Motion IS GRANTED and Steven Gross'

Counterclaim IS DISMISSED.


BY THE COURT:


_____

**JUDGE JOHN MILTON YOUNGE**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Ronald Lorch and Karen Lorch,** | : |
| | : |
| *Plaintiffs,* | : |
| | : **CIVIL ACTION** |
| **v.** | : |
| | : |
| **Steven I. Gross and Genevieve Gross,** | : **No. 2:24-cv-00070** |
| | : |
| *Defendants*. | : |

**PLAINTIFF RONALD LORCH'S' 12(b)(6) MOTION TO DISMISS
DEFENDANT STEVEN GROSS' COUNTERCLAIM AND
12(f) MOTION TO STRIKE DEMAND FOR ATTORNEYS' FEES**

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), Plaintiff Ronald Lorch seeks an Order dismissing Defendant Steven Gross' Counterclaim and striking any demand for attorneys' fees for the reasons stated in the accompanying Memorandum of Law, which is incorporated by referenced herein.

Dated: May 31, 2024

**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

By: */s/ Robert L. Ebby*
Robert L. Ebby (Attorney ID. No. 74249)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 496-7053

Of Counsel:
FEUERSTEIN KULICK LLP
David Feuerstein
420 Lexington Avenue, Suite 2024
New York, NY 10170
Tel: 646-768-0591
david@dfmklaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Ronald Lorch and Karen Lorch,** | : |
| | : |
| *Plaintiffs,* | : |
| | : |
| | : **CIVIL ACTION** |
| **v.** | : |
| | : |
| **Steven I. Gross and Genevieve Gross,** | : **No. 2:24-cv-00070** |
| | : |
| *Defendants.* | : |

**PLAINTIFF RONALD LORCH'S' BRIEF IN SUPPORT OF HIS 12(b)(6) MOTION TO DISMISS DEFENDANT STEVEN GROSS' COUNTERCLAIM AND 12(f) MOTION TO STRIKE DEMAND FOR ATTORNEYS' FEES**

I.     <u>INTRODUCTION</u>

This is a partnership divorce action, which, among other things, seeks to dissolve the parties' Partnership. Steven Gross' Counterclaim fails to assert any viable cause of action but does confirm that the Partnership is irretrievably broken and should be dissolved.

Ronald Lorch commenced the action after Mr. Gross, who has collected approximately $1,500-$2,100 per month for years to manage the Partnership's commercial office building, engaged in, among other things, the following conduct: (a) he refused to provide Mr. Lorch with access to the Partnership's books and records; (b) he mismanaged the office building – which is now in disrepair; (c) he engaged in self-dealing; (d) he repeatedly hung up on Mr. Lorch when Mr. Lorch contacted him by telephone to discuss the Partnership; and (e) he disclosed that, under his watch, an insider embezzled over $100,000 from the Partnership's bank account. Mr. Lorch subsequently learned that Mr. Gross had also failed to pay the Montgomery County property taxes for the property for the past two years. Further, the limited discovery received to date has revealed that Mr. Gross apparently freely dips into the Partnership's bank account to fund his

other entities and regularly comingles their funds or orchestrates intercompany loans, effectively treating the Partnership's bank account as a mere extension of his other businesses.

Apparently subscribing to the adage that the best defense is a strong offense (or to simply drive up litigation costs), Mr. Gross has now filed a Counterclaim against Mr. Lorch, alleging that Mr. Lorch somehow breached the Partnership Agreement and breached a fiduciary duty by declining Mr. Gross' alleged request for approximately $55,000 – $85,000 to replenish the Partnership funds that were embezzled by an insider (allegedly an employee of Mr. Gross' whom Mr. Gross apparently put in charge of the Partnership's finances but failed to supervise). That is, Mr. Gross does not allege that Mr. Lorch missed a Partnership capital call – there was no such capital call – but instead contends that Mr. Lorch is somehow liable for not bailing Mr. Gross out for his failure to monitor the Partnership's finances and permitting one of his employees to siphon off more than $100,000 from the Partnership's bank account. Moreover, Mr. Gross attempts to assert these claims even though he himself did not make any corresponding contribution to the Partnership. That is, Mr. Gross alleges Mr. Lorch is somehow subject to a different partnership contribution standard than to which he (Mr. Gross) holds himself.

As noted above, the Counterclaim is nothing more than confirmation that these partners are done with each other, the Partnership is irretrievable broken, and should be dissolved. The Counterclaim should be dismissed for at least the following reasons.

First, the Counterclaim is devoid of any allegation that there was a Partnership capital call or that Mr. Lorch failed to meet any such capital call (there was no such call). Indeed, the Partners never agreed on or issued any such capital call, which alone is sufficient to defeat Mr. Gross' claims. In short, Mr. Lorch could not have breached the Partnership Agreement or a fiduciary duty by not funding a non-existent capital call. Of course, even if there had been a

request to Mr. Lorch from Mr. Gross for such a contribution, declining such a request does not constitute a breach of contract or breach of fiduciary duty. Indeed, the Partnership Agreement does not require a Partner to contribute funds just because another Partner requests such funds to bail out the Partnership after he permitted an insider to steal over $100,000 from the Partnership.

Second, Mr. Gross himself did not contribute any such capital, and the Counterclaim is necessarily devoid of any allegation to the contrary. Instead, Mr. Gross contends that he engaged in self-dealing by unilaterally lending the Partnership $71,000 – at an exorbitant 8% interest rate – to pay for certain alleged tenant improvements. With respect to the tax bills, Mr. Gross simply did not pay them.[1] That is, the Counterclaim is based on (a) Mr. Gross' decision to milk the Partnership at an 8% interest rate; and (b) his election to forego paying the property's real estate taxes. If nothing else, Mr. Gross has no cause of action against Mr. Lorch because Mr. Gross himself did not make any corresponding contribution. That is, neither partner made the contribution about which Mr. Gross complains. As result, Mr. Gross cannot plausibly allege that he has suffered any damages. Indeed, the Counterclaim is devoid of any allegations regarding exactly how Mr. Gross has been harmed. Moreover, Mr. Gross created the very plight about which he now complains. Specifically, there would have been no need for any contribution from Mr. Lorch (or Mr. Gross) had Mr. Gross exercised reasonable diligence instead of permitting an insider (allegedly one of his employees) to embezzle over $100,000 from the Partnership's bank

---

[1] The Complaint alleges that the Partnership is now subject to a $100,000 tax lien, but the Montgomery County Court of Common Pleas dockets reflect that the lien is actually only approximately $40,000. Regardless, the Counterclaim does not appear to satisfy the Court's $75,000 amount in controversy threshold, as 50% of $100,000 is only $50,000, well below the $75,000 in controversy requirement. (Mr. Gross' claim for attorneys' fees cannot support any amount in controversy, as Mr. Gross has no basis for such a claim.)

account.[2] (Mr. Gross also glosses over whether, had Mr. Lorch made such a contribution to the Partnership, such funds would have sailed out the door with rest of the embezzled funds.)

Third, to the extent the Counterclaim is based on Mr. Lorch allegedly "abandoning" the Partnership in 2013, such claims are time barred, as such alleged conduct occurred more than ten years ago.

## II.   THE COUNTERCLAIM ALLEGATIONS

The Partnership was formed in December 1984 by Mr. Lorch, Mr. Gross (who is or was a CPA), and two other individuals. (Counterclaim ¶ 6.) Although the Counterclaim alleges that a copy of the Partnership Agreement is attached as Exhibit 1, no such exhibit is attached. Nonetheless, a copy of the Partnership Agreement is attached to the First Amended Complaint as Exhibit A. Mr. Gross subsequently acquired the Partnership interests of the other two individuals, and he alleges that he and Mr. Lorch each own 50% of the Partnership. (Counterclaim ¶ 8.)

As alleged in the Counterclaim, Mr. Gross has managed the office building for the Partnership since at least 2013, taking approximately $1,500 to $2,100 per month from the Partnership's bank account as compensation. (*See id.* ¶¶ 10-13.) The Counterclaim further alleges that in 2023 Mr. Lorch approved $71,000 in building renovations – even though he allegedly abandoned management of the office building and did not participate at all in its management – but declined to contribute $35,500 towards these costs "even when asked repeatedly by Gross and/or his representatives." (*Id.* ¶ 17.) Mr. Gross then unilaterally loaned the

---

[2] Although Mr. Gross insists that his employee stole the funds from the Partnership and that the FBI is investigating this theft, the details of the theft remain known only to Mr. Gross, as he has steadfastly refused to turnover information regarding the embezzlement, the alleged FBI investigation of the embezzlement (or to explain why the FBI – as opposed to local law enforcement – was even involved), or any efforts to recoup the stolen funds.

Partnership $71,000 to cover this cost, charging the Partnership 8% interest. (*See id.* ¶ 19.) The Counterclaim also alleges that Mr. Lorch declined to contribute approximately $20,000 to $50,000 for property taxes, which the Partnership did not pay after Mr. Gross declined to contribute any amount either. Instead, Mr. Gross – without disclosing this to Mr. Lorch – unilaterally elected to forego paying the property taxes, subjecting the office building to a tax lien. (*Id.* ¶ 20.) Mr. Gross then informed Mr. Lorch that he (Mr. Gross) was suspending Mr. Lorch's Partnership disbursements. (*Id.* ¶ 21.)

The Counterclaim alleges two counts. Count I alleges breach of contract, alleging that Mr. Lorch breached the Partnership Agreement by spending "zero time and effort in the operation and management of the Office Building" since 2013 and by declining to pay half of the costs of the recent renovations and tax bills. (*Id.* ¶¶ 27-28.) The Counterclaim then alleges that Mr. Gross has sustained "actual damages" but does not explain what these alleged "actual" damages are. The Counterclaim also seeks recovery of "Steven Gross' attorneys' fees and costs" but fails to include any basis for such an award of attorneys' fees. (*Id.* at 14.)

Count II alleges a breach of fiduciary duty. Specifically, the Count alleges that Mr. Lorch is required to refrain from "engaging in gross negligence, recklessness, or willful misconduct in the conduct of the partnership business" and that Mr. Lorch engaged in such conduct by declining to make the payments that Mr. Gross allegedly requested but that he himself did not make. (*Id.* ¶¶ 32-33.) As with Count I, Mr. Gross alleges that he suffered "actual damages," but neglects to disclose what these alleged "actual" damages are. (*Id.* ¶ 34.) Mr. Gross also once against seeks recovery of his attorneys' fees but fails to allege any basis to support an award of attorneys' fees. (*Id.* at 15.)

III.   **LEGAL ARGUMENT**

    A.    **Legal Standard**

The governing standards for a 12(b)(6) motion are well-known. Such a motion should be granted where, "accepting all well-pleaded allegations in the [counterclaim] complaint as true and viewing them in the light most favorable to the [counterclaim] plaintiff, a court finds that [counterclaim] plaintiff's claims lack facial plausibility." *Fenico v. City of Phila.*, 70 F.4th 151, 161 (3d Cir. 2023) (citation omitted). Plausibility in this context means that the counterclaim must plead "enough fact to raise a reasonable expectation" that there will be evidence to support the [counterclaim] plaintiff's claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Moreover, the "Court must take well-pleaded facts as true but need not credit a complaint's 'bald assertions' or 'legal conclusions'." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997).

Pursuant to Rule 12(f), a court may strike immaterial content from a pleading. Fed. R. Civ. P. 12(f); *Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F. Supp. 3d 560, 568 (E.D. Pa. 2020). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Id.* quoting *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). A claim for attorneys' fees that is unsupported by any contractual or statutory basis is subject to being stricken. *Canters Deli*, 460 F. Supp. 3d at 574-75.

B.     <u>Count I Should Be Dismissed</u>

To state a cause of action for breach of contract, a counterclaim must allege each of the following elements: (a) the existence of a contract, including its essential terms; (b) a breach of a duty imposed by the contract; and (c) resultant damages. *Seneca Res. Corp. v. S & T Bank*, 122 A.3d 374, 379 (Pa. Super. Ct. 2015). In the context of a motion to dismiss, a court need only examine the writing itself to give effect to the parties' understanding; under Pennsylvania law, the interpretation of an unambiguous contract is a question of law. *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980). A cause of action for breach of a written contract is governed by a four-year statute of limitations. *See* 42 Pa. Cons. Stat. § 5525(a).

Count I – Mr. Gross' purported claim against Mr. Lorch for breach of the Partnership Agreement for "abandoning" the Partnership in 2013 and declining to contribute an alleged total of $55,000 to $85,000 in 2023 when Mr. Gross himself did not do so either – should be dismissed.

First, there was never any Partnership capital call, and the Partnership Agreement does not contain any provision that requires Mr. Lorch to make a capital contribution upon Mr. Gross' unilateral, alleged say so. Indeed, the Counterclaim contains no such allegation, nor could it, as that is not how partnership's work. That is, Mr. Gross – an alleged 50% interest partner – cannot demand that Mr. Lorch contribute capital and then hold him liable for breach of the Partnership Agreement if he declines to do so (particularly where Mr. Gross himself did not contribute any such capital). In short, Count I alleges breach of an obligation that is not part of the Partnership Agreement, which, by definition, defeats any claim for breach of the Partnership Agreement.

Second, the Counterclaim fails to plausibly allege that Mr. Gross suffered any damages as a result of Mr. Lorch's alleged breach of the Partnership Agreement. Indeed, Mr. Gross himself did not contribute any such capital. On the contrary, Mr. Gross contends that he engaged

in self-dealing by unilaterally lending the Partnership $71,000 (at an exorbitant 8% interest rate) to pay for the alleged tenant improvements and that he simply did not pay the real estate tax bills. That is, Mr. Gross is making a profit on the 8% interest rate loan, so he cannot have suffered any damages as a result of Mr. Lorch declining to pay $35,000 for tenant improvements. Similarly, Mr. Gross suffered no damages as a result of Mr. Lorch not paying $20,000-$50,000 for taxes, as Mr. Gross also did not come out of pocket for such taxes; he simply elected not to pay them at all. Not surprisingly, the Counterclaim is devoid of any detail regarding exactly what Mr. Gross' alleged damages are. Mr. Gross also ignores that, to the extent additional funds were needed, it was only because of his own conduct in connection with an insider's alleged theft of over $100,000 from the Partnership's bank account. Mr. Gross cannot cause the need for the additional funds and then pursue a claim against Mr. Lorch to replace the very funds that were stolen under Mr. Gross' watch.

Third, to the extent Count I is based on Mr. Lorch allegedly "abandoning" the Partnership in 2013, the claim is time barred. Under Pennsylvania law, which governs this claim, claims for breach of a written contract are subject to a four-year statute of limitations. 42 Pa. Cons. Stat. § 5525(a). The Counterclaim alleges that Mr. Lorch engaged in such conduct more than 10 years ago. Accordingly, to the extent "abandoning" the Partnership could give rise to a cause of action for breach of contract, any such claim is time barred by the applicable four-year statute of limitations. *See* 42 Pa. Cons. Stat. § 5525(a).

Fourth, to the extent the Counterclaim is not dismissed in its entirety, Mr. Gross' demand for attorneys' fees should still be stricken pursuant to Rule 12(h). Under the American Rule, even if Mr. Gross were to prevail on his claims, he may not recover attorneys' fees without a

statutory or contractual basis for such an award. *Canters Deli*, 460 F. Supp. 3d at 574-75. The

Counterclaim, however, is devoid of any basis for such an award, as there is none.

      C.    <u>**Count II Should Be Dismissed**</u>

      To allege a cause of action for breach of fiduciary duty, a counterclaim must allege

(a) the existence of a fiduciary duty; (b) the counterclaim defendant breached that duty; (c) the

counterclaim plaintiff suffered injury; and (d) the counterclaim defendant's breach of the

fiduciary duty was a real factor bringing about the counterclaim plaintiff's injuries. *See Baker v.*

*Family Credit Counseling Corp.,* 440 F. Supp.2d 392, 414–15 (E.D. Pa. 2006). A cause of action

for breach of fiduciary duty is governed by a two-year statute of limitations. *See* 42 Pa. Cons.

Stat. § 5524(7).

      Here, the Counterclaim alleges that Mr. Lorch breached a fiduciary duty owed to Mr.

Gross by engaging in the same alleged conduct that forms the basis of Mr. Gross' breach of

contract claim. Specifically, the Counterclaim alleges that Mr. Lorch "engaged in gross

negligence, recklessness, or willful misconduct by allegedly "abandoning" management of the

office building in 2013 to Mr. Gross, who has been paid approximately $1,500 to 2,100 per

month to manage it, and then declining Mr. Gross' alleged requests to contribute approximately

$55,000 to $85,000 in 2023 to replace funds that were stolen under Mr. Gross' mismanagement

of the Partnership's office building and bank account. As with Count I, Count II should be

dismissed.

      First, Mr. Lorch did not have and could not have had a fiduciary duty to contribute

money to the Partnership at Mr. Gross' request. Not only does declining Mr. Gross' alleged

request for money not constitute an act of negligence, recklessness, or willful misconduct, a

partner's fiduciary duties do not include an obligation to bail out the Partnership from a financial

- 9 -

predicament created by another partner, as Mr. Gross did here. *See, e.g.,* 15 PA Cons Stat §§ 8411, *et. seq.*

Second, Mr. Gross himself did not contribute any such capital, which precludes him from pursuing any claim for breach of fiduciary duty against Mr. Lorch for the very same conduct in which Mr. Gross engaged.

Third, as with his breach of contract claim, Mr. Gross once again cannot plausibly allege that he suffered any damages as a result of Mr. Lorch declining to contribute $55,000-$85,000 to the Partnership to replenish the stolen funds. On the contrary, as noted above, Mr. Gross is profiting from his $71,000 loan at an 8% interest rate, and Mr. Gross did not advance any funds with respect to the tax bill or otherwise arrange for the tax bill to be paid, leaving him with no "actual damages." Not surprisingly, the Counterclaim does not explain what Mr. Gross' "actual damages" are or otherwise allege how he has been harmed.

Fourth, to the extent Count II is based on Mr. Lorch allegedly abandoning the management of the office building in 2013, such a claim is time-barred because such conduct allegedly occurred more than 10 years ago and is therefore barred by the applicable two-year statute of limitations. 42 Pa. Cons. Stat. § 5524(7).

Fifth, as noted above, to the extent the Counterclaim is not dismissed in its entirety, Mr. Gross' demand for attorneys' fees should still be stricken. *Canters Deli*, 460 F. Supp. 3d at 574-75.

## IV.   <u>CONCLUSION</u>

Although Mr. Gross' Counterclaim confirms that the Partnership is irretrievably broken and should be dissolved, the Counterclaim fails to allege any viable cause of action against Mr. Lorch. Accordingly, the Counterclaim should be dismissed.

Dated: May 31, 2024                    **HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

By:  */s/ Robert L. Ebby*
Robert L. Ebby (Attorney ID. No. 74249)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 496-7053

Of Counsel:
FEUERSTEIN KULICK LLP
David Feuerstein
420 Lexington Avenue, Suite 2024
New York, NY 10170
Tel: 646-768-0591
david@dfmklaw.com